STATE of Missouri, Respondent,

v.

Gene Autry CLARK, Appellant.

No. 46745.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 30, 1983.

Motion for Rehearing or Transfer
Denied Dec. 21, 1983.

Elbert A. Walton, Jr., St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

DOWD, Chief Judge.

Appellant Gene Autry Clark was found guilty of capital murder by a jury in the City of St. Louis and sentenced to life imprisonment. He appealed the judgment to the Supreme Court of Missouri which transferred the case to this court. We affirm.

Appellant is a former employee of the General Services Administration where he worked as a mechanic in the motor pool. He was discharged from this position in February of 1980 and appealed the dismissal through federal administrative channels. On October 10, 1980, appellant was notified that his appeal had been denied.

On October 15, 1980, appellant drove his auto into the motor pool garage, withdrew a semi-automatic shotgun, and immediately started shooting the weapon. Appellant fired three times, striking and injuring three persons. Appellant then walked into the nearby office of Wallace Dennis and accused Dennis of being responsible for appellant losing his job. Dennis pleaded with appellant to talk the matter over but appellant nonetheless fired two shots which fatally injured Dennis. Appellant next turned to an employee who was in the office and shot her as she attempted to escape.

The police arrested appellant at his home and asked him whether he had any weapons in his house. Appellant answered yes and led the officers to his bedroom where the police recovered a shotgun and a rifle.

During the arrest, appellant's wife, Mrs. Clark, was very upset and uncontrollable. The police officers testified that they believed she might try to harm herself or perhaps the officers, so they asked her if she had any firearms in the house. Without answering, Mrs. Clark walked down the hallway to a closet and unlocked the door. There, the police observed several long guns in cases. The officers removed these guns, one of which was later determined to be the gun used by appellant in the shootings at the motor pool.

Appellant raises four points on appeal. In his first point, appellant alleges that the trial court erred in denying appellant's motion for sequestration and individual voir dire of the jurors and in limiting the voir dire of the jury to certain "threshold questions" in the areas of the death penalty and

prior psychiatric contacts. However, appellant has neglected to include the voir dire in the record on appeal.

█ Rule 81.12(c) places the ultimate responsibility for the preparation and filing of the transcript upon the appellant. The appellant has the burden of demonstrating error and therefore it is his obligation to prepare and file a transcript which incorporates the proceedings below wherein the trial court erred. *Jackson v. State,* 514 S.W.2d 532, 533 (Mo.1974).

█ Without the record, we cannot determine whether or not the prospective jurors were sequestered or what questions were asked. Under the circumstances it is clear that appellant's first point is not reviewable on appeal. *State v. Cleveland,* 627 S.W.2d 600, 601 (Mo.1982).[1]

█ In appellant's second point, he contends that the trial court erred in denying appellant's motion challenging certain "death qualification" voir dire questions[2] because these resulted in a more conviction-prone jury, thereby denying appellant his right to a fair and impartial jury. We find that this point is similarly not reviewable on appeal because appellant failed to include the voir dire in the record on appeal.[3]

Appellant, in his third point, alleges that the trial court erred in denying his motion to dismiss on the ground that Section 565.001, RSMo.1978, the statute upon which the indictment was based, is violative of the Eighth Amendment of the United States Constitution and Article I, Section 21 of the Missouri Constitution because the sentence of death constitutes cruel and unusual punishment.

██ Although appellant was indicted for capital murder, the jury was not instructed on the death penalty and consequently, when found guilty, he was sentenced to life imprisonment. The existence of an actual controversy susceptible of some relief is essential to appellate jurisdiction. *Hribernik v. Reorganized School District R–3 of Washington County,* 276 S.W.2d 596, 598 (Mo.App.1955). Courts are not organized to engage in the academic exercise of determining whether the sentence of death constitutes cruel and unusual punishment when, in a case such as the one at bar, the jury was not even instructed on the death penalty. This issue has become moot and the point is therefore denied.

In his final point, appellant alleges that the trial court erred in denying appellant's motion to suppress the murder weapon because the only consent given for the second search and seizure of appellant's residence was obtained from Mrs. Clark, appellant's wife, who was described as "hysterical" and "out of control." Thus, appellant alleges that the consent obtained was not "knowingly" and "intelligently" given.

█ Under the Fourth and Fourteenth Amendments of the United States Constitution, a search conducted without a warrant issued upon probable cause is per se unreasonable. This is subject only to a few specifically established exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

█ One of the specifically established exceptions to the requirement of a warrant issued upon probable cause is a search conducted pursuant to consent. *Zap v. United States,* 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477 (1946). In relying on consent to justify the lawfulness of a search, the state has the burden of prov-

---

1. We notice, however, that in the middle of the trial, the court did indicate in a discussion at the bench that there was, in fact, individual voir dire and sequestration of the jury. Further, we find no motion in the legal file to broaden the voir dire questioning in order to determine more about the jurors' feelings regarding the death penalty and prior psychiatric contacts.

2. The Circuit Attorney asked the prospective jurors if they were consciously opposed to capital punishment.

3. Even if the voir dire was included in the record, since appellant did not receive the death penalty, he may not complain regarding the death-qualification of the jury. *State v. Thomas,* 625 S.W.2d 115, 127 (Mo.1981).

ing that the consent was in fact freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973).

Whether an apparent consent was in fact voluntarily given or was the product of duress or coercion is a question to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. at 228, 93 S.Ct. at 2048. While a person's knowledge of the right to refuse consent is a factor to be considered, the state is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. at 227, 93 S.Ct. at 2047.

In determining whether the consent to search was voluntarily given, the court may consider such factors as:

> [T]he number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and other matters comprising the totality of the circumstances.

*State v. Reese,* 625 S.W.2d 130, 132 (Mo. 1981).

In the instant case, although there were other officers in the vicinity, only two police officers asked Mrs. Clark if there were any weapons in the house. We find no evidence of the officers emphasizing their authority or displaying any weapons. Further, Mrs. Clark was not in police custody and there is no indication of fraud being used by the police. Rather, the officers merely asked Mrs. Clark if there were any weapons in the house. Instead of replying, she voluntarily led the police to a closet where the officers found weapons in plain view. Consequently, we find that the trial court did not err in denying appellant's motion to suppress because the totality of the circumstances disclosed Mrs. Clark's voluntary consent to the search. *State v. Rush,* 497 S.W.2d 213, 216 (Mo.App.1973).

Judgment affirmed.

SNYDER, P.J., and GAERTNER, J., concur.