STATE of Missouri,
Plaintiff-Respondent,

v.

Danny Ray MADISON,
Defendant-Appellant.

No. 48331.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 11, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 22, 1985.
Application to Transfer Denied
Feb. 26, 1985.

John Putzel, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

The appellant, Danny Ray Madison, was convicted by a jury of two counts of robbery in the first degree and one count of assault in the first degree. On appeal, appellant alleges trial court error in failing to suppress an unrecorded oral confession and a video tape recorded confession and trial court error in failing to submit to the jury an intoxication instruction. We affirm.

The facts are as follows: On April 12, 1982, Raymond Pendleton and Andrei Barnes were returning from a dance in the early morning hours. As they walked in the vicinity of Vernon Avenue in the City of St. Louis, appellant approached the two and asked if they wanted to buy some drugs. Both Pendleton and Barnes declined the offer. Appellant then walked behind the two, displayed a gun and demanded money. Pendleton gave the man two dollars while Barnes gave him twenty dollars.

Appellant then ordered the two into a gangway and ordered them to undress. Pendleton took off his shoes as did Barnes. The three began to walk. Pendleton asked to go back to the gangway to get his gloves. Appellant allowed him to do so. At this point, Pendleton began to run and appellant chased him. Barnes took the opportunity to escape.

Appellant eventually caught Pendleton and the two continued to walk. They stopped at a house where a person inside asked who was outside. Appellant answered "Danny Ray." Subsequently, appellant and Pendleton went to a playground. Appellant ordered Pendleton to turn around so his back was to appellant's face. Pendleton began to run and was shot eight times.

In determining the voluntariness of a confession the test is "whether the totality of the circumstances deprived appellant of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that the appellant's will was overborne at the time he confessed." *State v. Buckles,* 636 S.W.2d 914, 923 (Mo. banc 1982). In regard to the oral confession, the state's evidence shows the confession was given voluntarily. Appellant was advised of his rights and indicated he understood those rights. Appellant stated that the matter had been weighing on his mind and he knew he was wanted for the incident. Appellate review on a trial court's ruling on a motion to suppress is limited to a determination of whether the evidence was sufficient to support the trial court's finding. *State v. Baskerville,* 616 S.W.2d 839, 843 (Mo.1981). The evidence supports the trial court's finding.

As pertaining to the video tape, the transcript reveals that appellant expressed a desire not to make a statement. Appellant argues that *Miranda*[1] mandates that all further questioning cease, and as such, the officer's failure to terminate appellant's questioning rendered the video tape confession, *per se,* inadmissible. Pertinent parts of appellant's video tape were as follows:

Q ...... All right. Do you have any statements to make at this time in regards to that incident?

A No, sir.

Q You have no statements to make?

A No, sir.

Q We discussed this matter earlier today and you made a statement to me in reference to the incident. Are you saying at this time you do not wish to make a statement?

A Yes, sir.

Q Pardon?

A Yes, sir.

Q You wish to make a statement—yes or no? Do you wish to make a statement?

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A  No, I don't want to make no statement.

Q  We discussed this before we came down here and at that time you advised me that you did want to make a video statement.

A  What you talking about?  What happened?

Q  Yes, um-hum.  That's what I'm talking about, about this incident.

A  Yeah, I make it.

Q.  All right.  You want to tell me what happened on that particular day?

A  Yes, sir.

 Appellant is correct in his argument that if an individual indicates that he wishes to remain silent, the interrogation must cease. *Miranda*, 384 U.S. at 473–4, 86 S.Ct. at 1627–8.  Further, the state has a heavy burden to show waiver of the right to remain silent. *State v. Stevenson*, 523 S.W.2d 349, 351 (Mo.App.1975).

 However, as stated earlier, the test for voluntariness is the totality of the circumstances.  In the case at bar, the trial court determined that appellant voluntarily waived his right to remain silent.  The evidence supports this conclusion.  Appellant's indication that he did not wish to make a statement was not a refusal to talk but an indication that appellant did not understand the questioning.  This is evidenced by the fact that appellant asked the officer if he was inquiring about the incident in question and upon confirmation, proceeded to respond.  Additionally, appellant had his rights read to him before the video tape began.  Appellant signed a waiver form agreeing to the video statement.  The trial court did not err in admitting into evidence appellant's video tape confession.

 Lastly, appellant contends the trial court erred in refusing to give to the jury Missouri Approved Instruction—Criminal (MAI–CR2d) 3.30.1 regarding intoxication as it affected the mental state requisite to the commission of assault in the first degree.  To support an instruction on the intoxication defense, evidence must be presented that tends to show the defendant was so intoxicated that he did not know what he was doing.  *State v. Bienkowski*, 624 S.W.2d 107, 108 (Mo.App.1981).  No such evidence was produced at trial.

Appellant indicated by his confessions that he was aware of his actions on the night in question.  Appellant recounted every detail of his actions.  Appellant even confessed that he knew he was wanted.  This indicates appellant was aware that his actions on April 12, 1982 were illegal.  Appellant produced no testimony pertaining to his state of mind or his intoxication.  The only evidence presented at trial was the testimony of Pendleton and Barnes.  They testified that appellant's eyes were bloodshot, that he appeared "kind of high" and that he was acting crazy.  This evidence is not enough to support the giving of MAI–CR2d 3.30.

Judgment affirmed.

GAERTNER and KAROHL, JJ., concur.