STATE of Missouri,
Plaintiff–Respondent,

v.

James L. WILSON,
Defendant–Appellant.

No. 52295.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 6, 1988.

Application to Transfer Denied
June 14, 1988.

Alice A. O'Keefe, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant was convicted, after a jury trial, of three counts of robbery in the first degree, in violation of Section 569.020,

RSMo 1986; six counts of armed criminal action, in violation of Section 571.015, RSMo 1986; and three counts of kidnapping, in violation of Section 565.110, RSMo 1986. He was sentenced to a total of three consecutive life terms plus one hundred fifty years. We affirm.

Samuel Grace was working on the night of January 3, 1986 as the manager of the Motel 6 at 4576 Woodson Road in St. Louis County. His wife, Nadine, was at the desk in the motel office registering guests. A man requested a room for the night. After a brief delay while the room was prepared, Mr. Grace gave the man the key to Room 95. A short time later, someone reported that there was a problem with the ice machine in the motel, and Mr. Grace left the office to see to the repair. While he was involved in the repair, someone put a gun to his head and ordered him to go to Room 95. When they arrived at Room 95, the door opened and Mr. Grace was shoved inside the room. Two men with guns were waiting in the room. The three men beat Mr. Grace with their guns until he began to collapse. At that point, they propped him up in order to continue the assault. Finally, he was thrown on the floor and his feet were tied with strips of torn cloth. One of the assailants shouted, "Man, break his ribs!" Another man started jumping on the victim's back until they heard the sound of his ribs cracking. One of the assailants grabbed Mr. Grace by the hair, lifting his face off the floor, while another looked directly into the victim's face and announced, "You know, we mean business." Mr. Grace later identified the speaker as the defendant.

After throwing the victim's head to the floor, the defendant rolled the victim onto his back. One of the men then took a pair of pliers and began extracting the victim's teeth. In all, four teeth and the surrounding bone were broken. The defendant then shoved the gun back in the victim's face and said, "Do you know we mean business? We done all of this to make you know we mean business, now tell me which key operates the door and where the money is kept." While the defendant spoke, another man stuck his knee in the victim's throat.

Barely able to speak, the victim pointed to the key and told them where the money was kept. Two of the men left; the third tied Mr. Grace in a chair.

Nadine Grace and Susan Maechler, another employee of the motel, were in the office when two men with guns burst in and ordered them to lie on the floor face down. The women were bound and Mrs. Grace was kicked repeatedly. The men threatened to kill the women if they spoke and to kill Mr. Grace if the women didn't do as they were told.

About $1,600 was taken from the office. The men also took three cameras, $38 from Mrs. Grace's purse and several dollars from Susan before they left. Mrs. Grace was quickly able to free her hands after the men left, and still lying on the floor, she called the police.

In the meantime, the two men returned to Room 95 to get their accomplice and the trio fled in a waiting automobile. After a time, Mr. Grace worked the chair into the hall where the police subsequently discovered him still bound to the chair.

Defendant was arrested in the area several hours later. The arresting officer testified that he discovered the key to Motel 6, Room 95, in the defendant's pocket at the time he conducted a pat down search for weapons. Another police officer identified the defendant as one of the men that he had observed fleeing from the scene of an abandoned vehicle which had left the road after a high speed chase. The defendant's finger prints were found on a soda bottle inside the vehicle which the defendant admitted belonged to him. Mr. Grace identified the defendant in a line up a few days after the incident and again at the trial.

I

■ Defendant first contends that the trial court erred in allowing the state to exercise two of its peremptory challenges to strike the only two black members of the venire panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). The record before us fails to support this allegation. The defendant has

not provided this court with a transcript of the voir dire or the *Batson* hearing. Defendant's complaint is foreclosed because of his failure to provide a record of the proceedings. *See State v. Clark*, 671 S.W. 2d 1, 3 (Mo.App.1983).

## II

During the cross-examination of the defendant about his previous convictions, the following occurred:

> DEFENDANT: Mr. Ross, I was guilty. I pled guilty. I accepted what they had to offer me. I'm not guilty of this and I'm not going to accept this.
>
> PROSECUTOR: My question—just answer the question. Now, you said here you pled guilty because you accepted what they had to offer you; is that right?
>
> DEFENDANT: I said because I was guilty and I accepted what they had to offer.
>
> PROSECUTOR: And isn't that why we are here today, you don't want to accept what we have to offer?

The defense attorney objected to this line of questioning, but the trial court overruled the objection cautioning the prosecutor not to go into the background of the trial. When the trial resumed, the prosecutor abandoned his previous line of questioning and moved to different subject matter.

Rule 24.02(d)(5) states:

> Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or of an offer to plead guilty to the crime charged or of any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

The use in trial of a withdrawn guilty plea and statements made in connection with it constitutes reversible error. *State v. Danneman*, 708 S.W.2d 741 (Mo. App.1986). However, that is not the case here. Defendant did not plead or offer to plead guilty; he has claimed innocence

throughout the court proceedings. Defendant testified that he previously accepted the state's offers because he was guilty of the other crimes, but that he did not accept the state's offer to plead guilty in this case because he was not guilty. The question was not improper under the circumstances.

## III

Defendant also alleges that the trial court erred in overruling his objection to the prosecutor's question to defendant during cross-examination concerning whether the defendant had committed a specific crime. On direct examination, defendant was asked, "How long has it been since you have been convicted of a crime?" Defendant responded, "Since five years." On cross-examination, defendant was asked over objection, "Is it correct that you committed a crime November 11, 1985, at Jamestown Mall?" Defendant replied negatively.

In *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. banc 1979), it was held:

> Cross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, as here, lends itself to the creation of substantial prejudice even though the answers are in the negative.

In that case, the question was asked, "Mr. Dunn, on February the 17th, 1975, did you steal property from an automobile in St. Louis County?" The *Dunn* court, explained that:

> [A]lthough a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him. *Id.*

Recently in the case of *State v. Hurst*, 732 S.W.2d 206 (Mo.App.1987), this court reaffirmed the principles announced in the

*Dunn* case, and explained the differences between *Dunn* and later cases which have been distinguished from *Dunn*. In the later cases, the objection was sustained rather than overruled. Moreover, in those cases, the questions asked were general and did not contain specifics such as nature of the crime, and the time or place of occurrence. *Id.* at 208–09.

■ In the case at bar, the question mentioned both a date and place but did not specify the crime. However, when there is a mention of a specific date and place, "the jury must, as reasonable persons, conclude that the question is based upon information known to the questioner." *Dunn,* 577 S.W.2d at 651. The trial court's action in overruling defendant's objection to a question concerning another crime for which defendant was never convicted was error. *State v. Goodson,* 690 S.W.2d 155, 160 (Mo. App.1985).

■ Here, the mention of a crime of unspecified nature in the context of cross examination of the defendant was not prejudicial. The defendant had previously testified to a long list of prior convictions. Moreover, the evidence against him was overwhelming.

"Errors committed in the context of a criminal trial are presumed to be prejudicial, but that presumption is not conclusive and may be overcome by the facts and circumstances of the particular case." *Burton v. State,* 641 S.W.2d 95, 99 (Mo. banc 1982). Erroneous admission of unrelated crimes evidence comes under this rule. *State v. Hawkins,* 703 S.W.2d 67, 69 (Mo.App.1985); *State v. Woody,* 699 S.W.2d 517, 524 (Mo.App.1985). Error which in a close case might require reversal can be disregarded when the evidence of guilt is strong. *State v. Boyd,* 679 S.W.2d 325, 326 (Mo.App.1984). Although the trial court erred, the circumstances of this particular case do not require reversal.

## IV

■ Defendant asserts that the trial court erred in denying his motion in limine to exclude testimony by the victim concerning the attack on the victim's teeth with the pair of pliers. He relies on the general rule that evidence of uncharged crimes is inadmissible *unless* that evidence has a legitimate tendency to establish the defendant's guilt of the crime charged. *State v. Shaw,* 636 S.W.2d 667, 672 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982) (emphasis added). The exception that is built into the rule "permits the state to complete the story of the crime by proving the circumstances immediately attending the crime." *State v. Harden,* 639 S.W.2d 90, 93 (Mo.App.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983). When a series of crimes are committed as part of the same transaction, the state is not required to separate and exclude evidence relating to a crime for which the defendant was not charged. *Id.* The tortious beating inflicted upon the victim supported the state's case against the defendant for armed robbery and kidnapping. It was not error for the trial court to permit the victim to testify with respect to the vile treatment he received at the hands of the defendant and his accomplices.

## V

■ Defendant announced to the trial court that he wished to proceed pro se before his trial began, but he withdrew his request when he was given the impression that he would not be allowed another continuance to prepare for his trial. In an outburst by the defendant in the presence of the jury during the trial, the defendant demanded to be allowed to continue pro se. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Court recognized that a defendant in a criminal trial has a Sixth Amendment right to proceed without an attorney and to represent himself. However, the refusal to permit a defendant to represent himself when he equivocates before trial is not error. *See State v. Freeman,* 702 S.W.2d 869 (Mo. App.1985). The right to self-representation is one that the defendant must clearly and unequivocally assert before trial. *State v. McCafferty,* 587 S.W.2d 611, 612 (Mo.App. 1979) (citing *United States v. Bennett,* 539

F.2d 45, 50 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976)). It does not deny the defendant the right to self-representation when a midtrial request to proceed pro se is denied. *United States v. Wesley,* 798 F.2d 1155 (8th Cir.1986). The trial court did not abuse its discretion in denying the defendant's request in light of the defendant's inappropriate court room behavior. In addition, the defendant was being represented by counsel that the court found was "doing a fine job."

### VI

▮ In defendant's sixth point, he argues that the trial court erred in failing to excuse itself on the ground of prejudice against the defendant. Defendant contends that during plea negotiations, the judge, who later presided over his trial, stated, "I don't normally participate in plea negotiations but if you go to trial and are convicted, I guarantee you'll never get out of jail." Defendant argues that this statement evidenced personal prejudice of such intensity that the trial judge should have excused himself from presiding over defendant's trial.

The record before us does not contain the remark at issue. Defense counsel made no pre-trial effort to disqualify the judge either by written application or oral motion. Notwithstanding the defendant's failure to request the trial judge be disqualified, the record fails to reveal any instance where the trial judge's alleged prejudice objectively manifested itself. *See State v. Words,* 559 S.W.2d 63, 65 (Mo.App.1977). Rather, the record demonstrates the impartiality and evenhandedness of the court in dealing with the defendant despite his obstreperous conduct.

### VII

▮ Defendant's last point on appeal avers that the trial court erred in denying his motion to suppress statements that the defendant made to the police after his arrest. At the pre-trial hearing on the motion to suppress, Officer Dowling testified with regard to statements that the defendant made while he was in custody. The officer reported that he was in charge of booking the defendant. In preparation for the booking, he verbally read the defendant his *Miranda* rights. The defendant acknowledged that he understood his rights and that he waived them. In the conversation that followed, the defendant told Officer Dowling that he had rented a room at the motel after having gone there with two other men. The defendant also admitted that the trio had confronted the manager, taken him to the room, tied him in a chair and took his keys. In his statement, the defendant claimed that he was the look-out for the other two men who went into the motel office to get the money.

After the defendant had made the statement, the officer booked him. When he completed the booking procedure, he gave the defendant his *Miranda* rights in written form in anticipation of taking a written statement from the defendant. The defendant initialed each right to indicate that he understood, but in response to the question concerning his willingness to make a statement, the defendant checked a box marked "No." Because he refused to make a written statement, the defendant was placed in a holding cell.

At the trial, Officer Dowling was called to testify. He was asked if prior to and during booking he had advised the defendant of his rights. He answered, "Yes, sir, I did." He also testified that the defendant had stated that he understood those rights. This questioning followed:

PROSECUTOR: Did you ask him if he wanted to speak with you at that time?

WITNESS: Yes.

PROSECUTOR: What was his response?

WITNESS: He stopped talking to me.

PROSECUTOR: What if anything did you say to him or did he say to you at that time?

WITNESS: I asked him if he had been at the Motel 6 and he stated he had.

MR. KOSKI: Judge, I think I'm going to object and renew my earlier filed motions.

The court overruled the objection and the rest of Officer Dowling's testimony was essentially the same as he had given in the pre-trial hearing. On redirect examination, the prosecutor attempted to clarify the sequence of events with the following questions:

PROSECUTOR: And when he went through the form, Mr. Wilson, what was his response when he initialed the form?

WITNESS: He stated he understood each right and he initialed and indicating the same, and at the last where I asked if he was willing to talk to me now, he stated no.

PROSECUTOR: Okay. So he had talked to you after he had been advised verbally, but you booked him? You went over it with him in writing and wanted him to make a written statement. At that time he refused to talk to you further?

WITNESS: Yes, sir.

The trial court initially determines whether the statement is voluntary. *State v. Christian*, 604 S.W.2d 758, 761 (Mo.App. 1980). In reviewing the trial court's determination on the motion to suppress, the weight of the evidence and the credibility of the witnesses are questions for the trial court's resolution, and as an appellate court, we are to affirm if the judgment is supported by substantial evidence. *State v. Boggs*, 634 S.W.2d 447, 453 (Mo. banc 1982).

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." These safeguards include warning the defendant of his right to remain silent. *Id.* The defendant may waive his right to remain silent provided the waiver is made voluntarily, knowingly and intelligently. *Id.* At any time, if the defendant indicates in any manner that he does not wish to be interrogated, the police may not question him. *Id.* at 445, 86 S.Ct. at 1612.

Once a defendant challenges the admissibility of a statement, the state bears the burden of proving voluntariness. *State v. Buckles*, 636 S.W.2d 914, 923 (Mo. banc 1982).

Whether a confession is voluntary is judged by the totality of the circumstances. If a preponderance of the evidence indicates that a confession was freely and voluntarily given, after a knowing and intelligent waiver of the suspect's constitutional rights against self-incrimination, the confession is admissible in evidence.

*State v. Evans*, 676 S.W.2d 324, 327 (Mo. App.1984) (citations omitted).

Although there was some confusion in Officer Dowling's trial testimony, when the record is viewed in its entirety, it is clear that his trial testimony is consistent with the testimony he gave at the hearing on the motion to suppress. The testimony indicates a knowing and voluntary waiver of defendant's right to remain silent. *See State v. Madison*, 684 S.W.2d 532 (Mo.App. 1984). Because defendant voluntarily waived his *Miranda* rights, the only question for the jury was to decide whether they found the testimony of the police officer or the defendant more credible. Defendant's statements were properly admitted; his final point is denied.

The judgment of the trial court is affirmed.

STEPHAN, P.J., and DOWD, J., concur.