**STATE of Missouri, Respondent,**

v.

**James GASTON, Appellant.**

**No. 53450.**

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 11, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 16, 1988.

Application to Transfer Denied Jan. 17, 1989.

J. Martin Hadican, Clayton, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

In this jury tried case, defendant appeals his convictions of (1) second degree murder, a Class A felony under § 565.021 RSMo 1986, and (2) voluntary manslaughter, a Class B felony, in violation of § 565.023 RSMo 1986. We affirm.

Defendant raises three allegations of error. First, the trial court erred in giving a verdict possibilities instruction based on MAI–CR 3d 304.12 instead of one based on MAI–CR 3d 304.16. We disagree because MAI–CR 3d 304.16 is to be used when alternative submissions are made under one count; here, no alternative submissions were given. Second, the trial court erred in admitting into evidence two autopsy photographs of one victim. We disagree because the trial court did not abuse its discretion. Third, the trial court erred in overruling defendant's objection to the state's use of peremptory challenges to strike blacks from the jury. We disagree because the transcript does not contain the voir dire and thus the point is not properly reviewable; further, the trial court's finding of no purposeful discrimination is not erroneous.

Defendant lived with his girl friend, Alberta Dugger, for about three years. They lived in a basement apartment in Eddie Rucker's house. During the night of July 3, 1986, when defendant, Alberta, and Eddie, as well as Walter Brown were at the house, Eddie became ill.* Defendant went across the street to get Eddie's daughter, Sissy Rucker; when he returned to Eddie's house with Sissy, he went to the basement in search of Alberta. Returning upstairs, he told Sissy that Walter had "snuck downstairs with my woman" and she should "go see". Sissy went downstairs, but was unable to see anything in the dark, so she returned to the upstairs living room.

Later, Sissy went to the top of the basement steps. She heard Alberta running and saying "No, James, no, no"; Sissy then heard a "big bump." Defendant then went upstairs carrying a bloody knife and told Sissy and Eddie that he had killed Walter and Alberta.

Walter's body was found in the basement. He had been stabbed twice. Alberta was also found in the basement with two stab wounds. Each victim died from a loss of blood.

In his first point, defendant contends that the trial court erred in giving a verdict possibilities instruction based on MAI–CR 3d 304.12, instead of one based on MAI–CR 3d 304.16. He argues that as to each victim, the court submitted voluntary manslaughter as an alternative to murder in

---

* We refer to individuals by their first name for ease of reading, and not out of disrespect.

the second degree. As a result, he asserts that the correct verdict possibilities instruction is MAI–CR 3d 304.16, Verdict Possibilities: One Defendant—Alternative Submissions Under the Same Count—One Verdict.

At the time this case was tried, the MAI–CR 3d 304.16 in effect was dated January 1, 1987. Notes on Use 2 to that instruction said it must be used "when under one count an offense is submitted by multiple alternative instructions." Thus, the Notes on Use restricted the use of the instruction to those cases involving "alternative instructions".

On November 23, 1987, the Supreme Court approved a revision to MAI–CR 3d 304.16. A new Notes on Use 2 further clarifies when this instruction should be given. It says to use the instruction "when under one count one offense of the same degree is submitted by alternative instructions". It gives as an example the submission of murder in the second degree—conventional, using MAI–CR 3d 313.04, and murder in the second degree-felony, using MAI–CR 3d 313.06. In such a situation, you have "one offense of the same degree" —murder in the second degree—being submitted by alternative instructions because of alternative theories.

■ Here, murder in the second degree and voluntary manslaughter are not "of the same degree". Rather, manslaughter is a lesser degree offense of murder in the second degree, § 565.025.2(2)(a) RSMo 1986. Thus, MAI–CR 3d 304.16 was not applicable and the trial court correctly refused to give it. Point denied.

■ Defendant next alleges that the trial court erred in admitting into evidence two autopsy photographs of Alberta because the prejudicial effect outweighed any probative value. One exhibit shows the stab wound to the right flank area below the rib cage, while the other depicts the stab wound to the upper left abdomen. A surgical incision made following the stabbing, but prior to death, is also partially visible in the latter photograph.

It is well-settled that "[t]rial courts have broad discretion in the admission of photo-

graphs." *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc 1988); *State v. Chew,* 740 S.W.2d 715, 717 (Mo.App.E.D.1987). We find no abuse of that discretion in this case.

"Photographs are generally admissible if they are relevant to a material issue." *Murray,* 744 S.W.2d at 772. In his opening statement at the beginning of the trial and throughout his cross-examination of the State's witnesses, defendant maintained that the stabbing occurred while he was involved in a struggle with Alberta over the knife, and that he was acting in self-defense. The state had the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.

"Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony, and where they aid in establishing any element of the state's case." *Id.* The photographs showed the nature and location of Alberta's stab wounds. The assistant medical examiner testified that the nature and location of the wounds were consistent with the state's theory that defendant stabbed Alberta as she was attempting to flee from him. The photographs served as visual aids for this testimony. Thus, the photographs had probative value on the issue of whether the defendant acted in self-defense.

Further, the probative value outweighed any prejudice to defendant. The state represented to the trial court that Alberta was removed from the crime scene prior to the arrival of evidence technicians, and that the two photographs were the only ones available to show the stab wounds. At oral argument, defendant conceded that these were the only pictures. Although one photograph shows a surgical incision in addition to a stab wound, the assistant medical examiner clearly distinguished the stab wound from the incision.

While defendant describes the photographs as "gruesome," the photographs accurately depict the stab wounds inflicted on the victim. "If the photographs are grue-

some and shocking it is because the crime itself was of that nature." *Chew,* 740 S.W. 2d at 717. The trial court did not abuse its discretion in admitting the photographs. Point denied.

In his final point, defendant alleges that the trial court erred in overruling his objection to the state's use of peremptory challenges to remove four of six blacks from the jury.

■ The voir dire is not in the transcript provided to us. "It is the burden of defendant to demonstrate error", *State v. Charron,* 743 S.W.2d 436, 437 (Mo.App.E. D.1987), thus, he had a "duty to file a complete transcript on appeal." *State v. Grainger,* 721 S.W.2d 237, 239 (Mo.App.W. D.1986). Because defendant did not provide this court with a transcript of the voir dire or *Batson* hearing, he has not met his burden of demonstrating error. Defendant's point is, thus, not reviewable. *State v. Wilson,* 750 S.W.2d 560, 563 (Mo.App.E. D.1988).

In examining this point for plain error, we have studied, in light of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986) and *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), the trial court's twelve page memorandum detailing its finding that there was no racial discrimination by the prosecutor. The trial court's finding is in conformity with the principles set forth in these cases, and we find no plain error resulting in manifest injustice. Point denied.

The judgment is affirmed.

PUDLOWSKI, C.J., and KAROHL, J., concur.