STATE of Missouri, Respondent,

v.

Pablo GOMEZ, Appellant.

Pablo GOMEZ, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45288, WD 46612.

Missouri Court of Appeals,
Western District.

Oct. 19, 1993.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

ULRICH, Presiding Judge.

Pablo Gomez was convicted by a jury of fraudulently stopping payment of a check in violation of Section 570.125 RSMo (1986). Mr. Gomez was sentenced to three years imprisonment. Additionally, Mr. Gomez's postconviction Rule 29.15 motion was denied. He appeals the judgment of conviction and denial of his Rule 29.15 motion.

Mr. Gomez alleges three points on appeal. He claims that (1) insufficient evidence to support the conviction was presented; (2) the trial court's refusal to allow him to proceed pro se at trial deprived him of his right to counsel and his right to conduct his own defense; and (3) the motion court erred in denying his Rule 29.15 motion because his appointed counsel's refusal or failure to present certain defenses that he desired to pursue constituted denial of his right to effective assistance of counsel.

The judgment of conviction is affirmed. The judgment denying Mr. Gomez's Rule 29.15 motion is affirmed.

### FACTS

Viewed in the light most favorable to the verdict, *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992), the evidence at trial established that Mr. Gomez, a resident of St. Louis, was involved in an automobile accident. His vehicle was taken to Perry Legend Collision Repair Center in Columbia ("Perry Legend"). Mr. Gomez's insurance company "totaled" the car and told him it would pay him approximately $6,000.00. Mr. Gomez received a written estimate from an employee of Perry Legend that to repair the vehicle would cost $4,554.89. Mr. Gomez was told that the actual cost of repairing the

vehicle could vary from the estimate by as much as $500.00. During his discussion with Perry Legend, Mr. Gomez disclosed what his insurance company was paying him for the damage sustained by the vehicle.

As Perry Legend began the repairs, more damage was identified by Perry Legend. A representative of Perry Legend contacted Mr. Gomez and told him of the additional damage and that the additional cost of repair would be about $500.00. On several subsequent occasions, additional damage was identified and each time a Perry Legend representative telephoned Mr. Gomez[1] and asked for approval to repair the damage for an additional charge. Mr. Gomez approved the additional repairs each time approval was sought, but he filed a complaint with the Better Business Bureau. Perry Legend informed the Better Business Bureau that the increases had been approved beforehand. The final bill was $5,863.21.

Mr. Gomez went to Columbia on Saturday, February 23, 1990. He test drove the car and complained that the radio was not working. A Perry Legend employee explained to Mr. Gomez that the radio was not considered a part of the estimated cost of repair. Mr. Gomez signed an acceptance form, accepting the automobile in its repaired form, and wrote a check to Perry Legend in the amount of the final bill.[2] He was informed that Perry Legend "prosecutes" insufficient funds or stopped payment checks which are in violation of Missouri law.

The following Monday, February 26, 1990, Mr. Gomez caused a "stop payment" order to issue on the check he gave Perry Legend. The reason given to the bank was that he was "dissatisfied with the service." Mr. Gomez testified that he stopped payment because he disagreed with the cost of repair

increases and because he experienced problems with the repairs.[3]

Perry Legend contacted Mr. Gomez's wife who stated that she did not want to get "in the middle of it," but she said that she would have Mr. Gomez return the call. Mr. Gomez did not speak with anyone at Perry Legend after he acquired custody of his car.

Mr. Gomez tendered partial remuneration to Perry Legend a second time. On March 1, 1990, the Thursday after stopping payment on his check, Mr. Gomez obtained a certified check for $5,000.00. He mailed that check to Perry Legend from Washington, D.C., on Saturday, March 3, 1990.

Mr. Gomez interrupted the second tendered payment. On March 6 or 7, after returning to St. Louis, Mr. Gomez caused the appropriate bank to stop payment on the certified check, telling the bank that it had been lost. Mr. Gomez testified that he caused the bank to stop payment on the cashier's check because he experienced problems with the car as he drove it back from Washington, D.C., and he had learned that Perry Legend had refused to arbitrate the increased cost of repair.

Mr. Gomez did not contact Perry Legend even after he received a "ten-day letter" from Perry Legend.[4] Perry Legend attempted to contact Mr. Gomez at the accounting firm where he had worked as an auditor. The accounting firm informed the Perry Legend representative that Mr. Gomez no longer worked there. Mr. Gomez had moved to California and taken employment there.

Perry Legend referred the matter to the Boone County prosecutor, and Mr. Gomez was arrested and tried before a jury. The jury returned a verdict of guilty. Mr. Gomez

---

1. Mr. Gomez claimed that each time the Perry Legend representative telephoned, he spoke with Mr. Gomez's wife. Mr. Gomez's wife was not present at trial and did not testify.

2. Mr. Gomez wrote two checks, the first one he voided when the Perry Legend employee pointed out that the numerical amount and the written amount were not the same.

3. Perry Legend gave Mr. Gomez a "limited lifetime" warranty on the repairs made by the business.

4. Section 570.125, RSMo (1986), provides for notice to the issuer of the check in the form of certified or registered mail that failure to make good the check within ten days of receipt of the notice may subject the issuer of the check to criminal prosecution.

was sentenced as a prior and persistent offender[5] to three years imprisonment.

## I

As his first point on appeal, Mr. Gomez claims that the evidence at trial was not sufficient to establish that he fraudulently stopped payment on an instrument. When sufficiency of the evidence is at issue, appellate courts consider all substantial evidence and inference in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Martin*, 852 S.W.2d 844, 848 (Mo.App.1992) (citing *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992)). Appellate courts do not weigh the evidence. *Martin, supra* at 848 (citing *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc) *cert. denied*, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991)). Courts of appeal do not determine the credibility of witnesses. *Martin, supra* at 848. The jury determines the credibility of witnesses and may believe all, some or none of a witness's testimony in arriving at a verdict. *Id.* (citing *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). Review in the appellate court is limited to determining whether substantial evidence was presented from which a jury could find the defendant guilty beyond a reasonable doubt. *Martin, supra* at 848–49 (citing *Dulany, supra* at 55). Substantial evidence is evidence from which the trier of fact could reasonably find the issue in harmony with the verdict. *Martin, supra* at 849.

Mr. Gomez testified that his conduct was his effort to resolve a dispute with Perry Legend over the increased price charged to repair his vehicle. However, the testimonies of the state's witnesses provided substantial evidence that the jury could find beyond a reasonable doubt that Mr. Gomez acted with fraudulent intent when he stopped payment on the $5,863.21 personal check he presented to Perry Legend as payment for work done on his car.[6] The testimonies of Perry Legend employees indicated that Mr. Gomez did not protest the cost of repair increases when he acquired the car from Perry Legend. Mr. Gomez made no attempt to contact Perry Legend after the stop payment, other than sending the cashier's check without explanation. The jury weighed the credibility of the state's witnesses, the evidence presented, and the credibility of Mr. Gomez's testimony. The jury determined that Mr. Gomez acted with fraudulent intent when he stopped payment on the personal check made to Perry Legend. The state's evidence was sufficient for a reasonable jury to find Mr. Gomez guilty of the crime charged. Mr. Gomez's first point is denied.

## II

Mr. Gomez also claims as his second point on appeal that the trial court abused its discretion by denying Mr. Gomez his right to counsel and his right to conduct his own defense. The court denied Mr. Gomez's request to proceed pro se and appointed counsel to represent him.

Mr. Gomez perceived a conflict with the first public defender appointed to represent him. He filed a motion to remove counsel. The public defender then appointed another assistant as "conflicts" attorney to represent Mr. Gomez. Mr. Gomez, without presenting any grounds to the trial court, moved that he be appointed private counsel despite not having the ability to pay for private counsel. When the court denied that motion, Mr. Gomez made an oral motion to proceed pro se. Mr. Gomez did not allege any conflict or problem with the second public defender.

The record appears that Mr. Gomez's decision to proceed pro se pretrial was made "on the spur of the moment" and was responsive to his unsuccessful attempt to have private counsel appointed or to his unsuccessful attempt to present a motion to dismiss which he had drafted. The trial court rejected Mr. Gomez's motion to dismiss and stated that Mr. Gomez then had new counsel and that the court would entertain motions from counsel only. The trial court then denied Mr.

---

5. Mr. Gomez had served prison sentences in Ohio on three separate occasions for conviction of felonies (auto theft, burglary and grand larceny).

6. Mr. Gomez was not prosecuted for the stop payment order he caused the bank to issue on the subsequent $5,000 cashier's check presented to Perry Legend.

Gomez's motion to represent himself stating that the court did not think Mr. Gomez was able to represent himself without counsel.

Two months passed before Mr. Gomez attempted to file another motion. This motion to proceed pro se came during trial after jury selection. During the two months between motions, Mr. Gomez did not indicate to the court that he wished to represent himself. The trial court again denied the motion, "[i]n view of the fact that this case has already commenced."

Before trial, Mr. Gomez wished to present defenses based on civil law. He believed that any civil remedy he might have would be a defense against the criminal charges. Mr. Gomez's public defender, instead, chose to defend on the lack of criminal intent, arguing and presenting evidence on the element of "knowingly, with the purpose to defraud."[7] However, pretrial conflict between counsel and defendant over the defense to be presented had not yet arisen. The only potential conflict existing at the pretrial hearing regarded the filing of Mr. Gomez's motion for dismissal which did allege civil defenses to the charged criminal violation.

■ A criminal defendant has a right to proceed pro se. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). When a defendant is allowed to proceed pro se, the trial court must make a determination that the defendant is knowingly and intelligently waiving his Sixth Amendment right to the assistance of counsel. *Id.* at 835; *State v. Watson,* 687 S.W.2d 667, 669 (Mo.App.1985).

■ However, "[t]he right to self-representation is one that the defendant must clearly and unequivocally assert before trial." *State v. Wilson,* 750 S.W.2d 560, 564 (Mo. App.1988); *Richardson v. State,* 773 S.W.2d 858, 860 (Mo.App.1989). In *State v. Power,* 721 S.W.2d 194, 195 (Mo.App.1986), just before voir dire, the defendant made a motion to dismiss counsel. At that time there was mention of defendant proceeding pro se, but

no formal motion was made. Two days after jury selection, just before trial was to begin, defendant made a motion to dismiss his appointed public defender and to proceed pro se. The trial court denied his motion as being untimely. The subsequent conviction was affirmed. The court in *Power* said that when a request to proceed pro se is not made in a timely manner, whether to allow the defendant to proceed pro se is left to the court's discretion. *Power, supra* at 195. The *Power* court stated that a motion after jury selection was "clearly untimely." *Id.*

■ The Supreme Court in *Faretta* listed the fact that the defendant's clear and unequivocal request to self-represent was "made weeks before trial." *Faretta, supra* at 835; *see also Richardson v. State,* 773 S.W.2d 858, 860 (Mo.App.1989) (The choice to self-represent was not timely when first expressed after the state had concluded its voir dire); *State v. Herron,* 736 S.W.2d 447, 449 (Mo.App.1987) (Motion to proceed pro se is untimely when made on the morning of trial). Refusal by the trial court to allow a defendant to proceed pro se is not error when the defendant equivocates before trial regarding his desire to proceed pro se. *Wilson, supra* at 564.

The right to defend oneself is not a tool to surprise the prosecutor or obtain continuances. The court, the prosecutor, and especially the criminal defendant, need ample time to prepare for trial. Allowing an untimely motion to proceed pro se would either require a continuance, which is not the intended use of the right, *see State v. Sharkey,* 821 S.W.2d 544, 546 (Mo.App.1991), or would require the proceedings to proceed as scheduled which would not be fair to the parties involved, especially an unprepared defendant. A trial court in Missouri granting a defendant's unequivocal motion to represent himself should obtain the written waiver of counsel from the defendant which contains specific information and warnings. Section 600.051 RSMo (1986).[8]

---

7. § 570.125(1) RSMo (1986).

8. The Missouri Supreme Court has held that the information could be presented to a defendant in open court and read into the record if it were "crystal clear" that defendant has a firm purpose of conducting his own trial but refuses to sign the waiver form. *May v. State,* 718 S.W.2d 495 (Mo. banc 1986).

■ Mr. Gomez's first pre-trial motion to proceed pro se appeared to have been a sudden thought expressed without deliberation. The request was not unequivocal. The trial court found that Mr. Gomez:

did not make a knowing and intelligent waiver of the right to assistance of counsel. In addition, [Mr. Gomez] had no comprehension of the difference between substantive criminal law and civil law or criminal procedure versus civil procedure. Based upon this court's observation, [Mr. Gomez] was incapable of representing himself in a criminal proceeding in an orderly and non-disruptive manner.

The trial judge was correct in denying the first oral motion to proceed pro se. Mr. Gomez, after working with his newly appointed public defender, still had ample time to file a motion several weeks before trial. Mr. Gomez's second motion, made on the morning of trial after voir dire, was untimely.

Point two is denied.

### III

Mr. Gomez, for his third point, argues that the trial court erred in denying his Rule 29.15 motion to vacate, set aside or correct judgment and sentence because he was denied his right to effective assistance of counsel. He claims that his trial counsel breached the minimum standard required of defense counsel by failing to explain to the jury that Mr. Gomez believed he had a defense based on the Uniform Commercial Code. Additionally, Mr. Gomez contends that his trial counsel was deficient in failing to file a motion to dismiss the charge based on the same UCC defense. Mr. Gomez claims that he had certain civil defenses based on consumer contract law and commercial transactions law that would have exonerated his action of stopping payment on his personal check. He believes that the verdict would have been in his favor had his purported defenses been explained to the jury.

■ If trial counsel's error clearly changes the outcome of a trial, the case should be remanded for a new trial. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Kennedy v. State*, 771 S.W.2d 852, 857 (Mo.App. 1989). An appellate court's review of the denial of a Rule 29.15 motion is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Jones v. State*, 771 S.W.2d 349, 351 (Mo.App.1989); Rule 29.-15(j). Such findings and conclusions are clearly erroneous if the appellate court is left with a definite and firm impression that a mistake has been made. *Abrams v. State*, 698 S.W.2d 15, 17 (Mo.App.1985). There is a strong presumption that trial counsel was competent. *State v. Bailey*, 839 S.W.2d 657, 662 (Mo.App.1992).

■ Mr. Gomez confuses civil remedies with criminal proceedings. The defenses which he attempted to interject into his criminal trial might be relevant defenses in a civil trial between Perry Legend and Mr. Gomez. Perry Legend is not a party in the criminal trial. Mr. Gomez's purported civil defenses against Perry Legend's alleged civil wrongs are inapplicable as defenses against the state's charges. Mr. Gomez's public defender quite properly refused to introduce Mr. Gomez's confused array of civil remedies and civil defenses. His attorney is bound by rules of ethics to not controvert an issue unless there is a basis for doing so that is not frivolous,[9] to not make a false statement of law to a tribunal,[10] and in trial, shall not allude to any matter that the lawyer does not reasonably believe is relevant.[11] Mistake of law is not a defense available to Mr. Gomez in a criminal trial defending the fraudulent stop payment of an instrument. *Reeder v. Board of Police Comm'rs*, 800 S.W.2d 5, 6 (Mo.App.1990).

The key issue in this trial was Mr. Gomez's intent. Mr. Gomez's trial counsel correctly focused on whether Mr. Gomez's actions were "knowingly fraudulent." The trial court, in ruling on Mr. Gomez's Rule 29.15 motion, found that at trial, Mr. Gomez's counsel attempted to characterize the situa-

9.  Rule 3.1.

10.  Rule 3.3.

11.  Rule 3.4.

**658**

tion as a civil dispute whereby Mr. Gomez stopped payment on the check in question for the purpose of attempting to obtain a fair price for the repairs and not for the purpose of defrauding the complainant. Trial counsel's choice of defense was a matter of sound trial strategy and does not form a basis for an ineffective assistance of counsel claim. *State v. Ervin,* 835 S.W.2d 905, 930 (Mo. banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

Mr. Gomez was not denied effective assistance of counsel. Point three is denied.

The judgment of conviction is affirmed. The judgment denying Mr. Gomez's Rule 29.15 postconviction motion is affirmed.

All concur.