**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Jerry PARKER, Defendant–Appellant.**

**Jerry PARKER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

Nos. 17843, 18969.

Missouri Court of Appeals,
Southern District.

Nov. 28, 1994.

Motion for Rehearing or Transfer
Denied Dec. 19, 1994.

**314**

Tamara Detloff, Office of the State Public Defender, St. Louis, for defendant-movant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

## PER CURIAM.

Following his conviction by a jury, Jerry L. Parker (Parker) was sentenced to thirty years' imprisonment for the offense of sodomy (§ 566.060),[1] fifteen years' imprisonment on each of three separate offenses of kidnaping (§ 565.110), thirty years' imprisonment on each of four separate offenses of armed criminal action (§ 571.015), and six months' imprisonment in the county jail for the offense of third degree sexual abuse, a class A misdemeanor (§ 566.120). All sentences were ordered to be served consecutively. Parker's direct appeal from those convictions is No. 17843.

After he was sentenced, Parker filed a pro se motion under Rule 29.15[2] seeking to va-

---

1. All references to statutes are to RSMo 1986, unless otherwise noted.

2. All references to rules are to Missouri Rules of Court (West 1994).

cate his convictions and sentences. Appointed counsel later filed an amended Rule 29.15 motion. Following an evidentiary hearing, the motion court denied both motions. Parker's appeal from the denial of his motions is No. 18969.

These appeals were consolidated per Rule 29.15(*l*).

We affirm in both cases.

### DIRECT APPEAL—No. 17843

*Facts From Trial Testimony*

The victims were three young girls, B.D.C., age 13, H.J.R., age 11, and K.L.B., age 10. Their testimony concerning the offenses includes the following.

Near midday on August 10, 1989, the girls went to a public park in Gerald, Missouri. While at a gazebo in the park, they were accosted by a man carrying a gun in his hand. He told them to go with him to a bathroom in the park. B.D.C. objected and started to leave, whereon the assailant threatened to shoot her. All three girls then entered the women's bathroom as ordered, followed by their assailant.

Once inside, the assailant tied H.J.R. and B.D.C. to a drain pipe, then led the youngest girl, K.L.B., toward a bathroom stall. Before entering the stall, he lifted K.L.B.'s T-shirt and fondled her breasts. K.L.B. began to cry and asked her sister, B.D.C., to "help" her, whereon B.D.C. asked the assailant to "take me instead" and "don't hurt K." The assailant then tied K.L.B. to the drain pipe and released B.D.C. from her confinement. B.D.C. was taken to a bathroom stall where the assailant ordered her to have oral sex with him, which she did.

As B.D.C. was being sodomized, a car came into the park. After that vehicle passed by, the assailant took B.D.C. back to the sink, tied her up with K.G.B., and left.

Throughout this incident, the assailant kept the gun displayed, either in his hand or under his arm. As he left the bathroom, he pointed the gun at the girls and told them, "I'm going to go outside for a few minutes, and if I hear any of you scream, I'm going to come back in here and kill you all."

Upon hearing the assailant's car leave, the girls freed themselves and ran to a neighbor's house. After family was contacted, police were called and an investigation commenced. On August 31, 1989, Parker was charged with the offenses.

At trial, all three girls identified Parker as their assailant.

Parker did not testify at trial but offered the testimony of two alibi witnesses. Their testimony, if believed, tended to show that Parker was elsewhere when the offenses took place. He offered testimony of three other witnesses which, if believed, tended to show that Parker's vehicle differed from the victims' description of the assailant's car.

We recite additional facts when essential to an understanding of Parker's points on appeal.

*Point I—Denial of Right of Self-Representation*

For his first point, Parker avers that he was denied his constitutional right to defend himself. He argues his request for self-representation was timely and unequivocal, and, consequently, the trial court erred when it overruled his "Motion to Proceed Pro Se."

■ An accused has a constitutional right under the Sixth Amendment to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Fourteenth Amendment extends the Sixth Amendment right of self-representation to defendants charged in state courts. *State v. Gilmore*, 697 S.W.2d 172, 174[3] (Mo.banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); *State v. Edwards*, 592 S.W.2d 308, 310[1, 2] (Mo.App. 1979).

■ The *Faretta* court implicitly recognized, however, that the right of an accused to represent himself is not an absolute right. *See State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173, 187 (1983), cited with approval in *State v. Power*, 721 S.W.2d 194, 195 (Mo.App. 1986).

"[T]he right of self-representation is a qualified right and its exercise is subject to reasonable restrictions designed to further

two important considerations: protection of other fundamental rights guaranteed the accused by the Constitution, and protection of the orderly administration of the judicial process."

*Sheppard,* 310 S.E.2d at 187[19]. Thus, exercise by an accused of his right to self-representation is conditioned on a knowing and intelligent waiver of the right to counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); *Gilmore,* 697 S.W.2d at 174[4]. Moreover, self-representation is a right that an accused must clearly and unequivocally assert before trial. *State v. Wilson,* 750 S.W.2d 560, 564 (Mo.App.1988); *Power,* 721 S.W.2d at 195[1]. The right of self-representation is intended to insure an accused's right to a full and fair trial but is not intended to enable an accused to avoid or delay the trial for any unjustifiable reason. *State v. Sharkey,* 821 S.W.2d 544, 546[4] (Mo.App.1991). Accordingly, if a request to proceed *pro se* is untimely, the court in its discretion may refuse to allow self-representation. *State v. Herron,* 736 S.W.2d 447, 449 (Mo.App.1987); *Power,* 721 S.W.2d at 195[3].

Here, Parker filed his motion to proceed pro se on Friday, July 19, 1991. His trial was scheduled to begin Monday, July 22, 1991. Because of the intervening weekend, his request was in effect made one day before his trial was to begin.

His motion to proceed pro se said that he "reject[ed] appointed counsel, [her] theory of defense and method of representation." Continuing, the motion read:

"2. On being allowed to proceed pro se, the movant requests that the trial not be delayed for any extended period of time; however, the movant will need to be allowed to review the legal file to prepare before trial.

3. Movant requests that an investigator be provided to deliver subpoenas due to the fact that the movant will seek to endorse additional witnesses for the defense."

Parker's motion to proceed pro se was the first pretrial matter considered on Monday morning, July 22. After extended inquiry of Parker regarding his request, the court denied the motion as "not ... timely filed" and "made to hinder the administration of justice."

On its face, Parker's motion was not an unequivocal demand to proceed pro se *without delay.* It coupled Parker's self-representation request with his request for delay, albeit not "extended," so that he might prepare. Although Parker now insists that he orally withdrew his request for delay on Monday morning, the record shows that his announcement in that regard was equivocal and conditional. Specifically, Parker said, "I would withdraw the request for delay, for extra time, *if* I'm allowed to review the file, like, in my cell and go over it with the public defenders because I have a couple questions about that." When the trial judge attempted to learn from Parker what he meant by "review" of his file, Parker's lack of preparation was fully revealed by his response:

"Well, I'd like—much of this stuff I've never seen. I don't have any idea what she even has on a lot of it.

And I'd also like to view that videotape. That videotape was made not as part of the prosecution's case but as part of my defense, and I feel that might be important to my defense."

When asked if he was familiar with the pretrial rulings on numerous Motions in Limine and what areas he could and could not go into, Parker's response was, "Well, I know that my attorney stipulated to some of those, which I did not agree with at the time."

■ Parker's motion and his oral presentation of it to the trial judge reveals that if his motion had been allowed, either a continuance would have been necessary, which is not the intended use of the right of self-representation, *see Sharkey,* 821 S.W.2d at 546, or the trial would have gone on as scheduled which would not have been fair to the parties involved, especially to Parker who admitted that he was unprepared. *See State v. Gomez,* 863 S.W.2d 652, 656 (Mo.App. 1993). In such a case, the motion for self-representation is addressed to the sound discretion of the trial court. *Power,* 721 S.W.2d at 195. Under the circumstances, the trial court did not abuse its discretion when it

denied Parker's request for self-representation made on the Friday preceding the Monday the trial was to start. *See Williams v. State*, 655 P.2d 273, 276[3] (Wyo.1982). Point denied.

*Point IX—Speedy Trial Issue*

In Point IX Parker asserts that the trial court erred in overruling his motion for acquittal because it lost jurisdiction to try him as "more than 180 days passed between the time [he] requested a speedy trial pursuant to the [Uniform Mandatory Disposition of Detainers Law (UMDDL), §§ 217.450 to 485] and the time when the trial actually began."[3] He says that he first asked for final disposition of his case under § 217.450 of the UMDDL on May 11, 1990, and that no tolling of the 180–day requirement of § 217.460 should be charged against him. With that as his premise, Parker argues that the failure to bring him to trial until July 8, 1991—423 days later—deprived the trial court of jurisdiction.[4]

Section 217.450.1, RSMo Supp.1990, provides:

"1. Any person confined in a department correctional facility may request a final disposition of any untried ... information ... pending in this state against him while so imprisoned. The request shall be in writing addressed to the court in which the ... information ... is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment."

Section 217.455, RSMo Supp.1990, specifically states:

"The request provided for in section 217.450 shall be delivered to the director, who shall forthwith:

(1) Certify the term of commitment under which the offender is being held, the time already served, the time remaining to be served on the sentence, the time of parole eligibility of the offender, and any

decisions of the state board of probation and parole relating to the offender; and

(2) Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the prosecuting attorney to whom it is addressed."

The pertinent part of § 217.460, RSMo Supp.1990, reads:

"Within one hundred eighty days after the receipt of the request and certificate pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney or within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the ... information ... shall be brought to trial.... If the ... information ... is not brought to trial within the period, no court of this state shall have jurisdiction of such ... information ... nor shall the untried ... information ... be of any further force or effect; and the court shall issue an order dismissing the same with prejudice."

■ Parker's claim that he first invoked the provisions of the UMDDL on May 11, 1990, is based upon a letter he filed with the Franklin County Circuit Clerk on that date. In its entirety, the body of that letter reads:

"Please inform me as to whether the above mentioned cause has been scheduled for trial.

Also, please file this letter as a complaint to the violation of my right to a speedy trial as outlined by the sixth and fourteenth amendment."

Parker's letter did not invoke the rights under §§ 217.450–485. *See Duncan v. State*, 864 S.W.2d 431, 432[1] (Mo.App.1993). Rather, it is merely a request for a speedy trial pursuant to the Sixth Amendment. *Id.*

Moreover, this record does not reveal that Parker's May 1990 letter met the procedural requirements of § 217.450 and § 217.455. First, there is no proof that the letter was

---

3. Section 217.485, reads: "Sections 217.450 to 217.485 may be cited as the 'Uniform Mandatory Disposition of Detainers Law.'"

4. Parker's first trial for these offenses was held July 8–12, 1991. It ended in a mistrial when the jury was unable to reach a verdict. The case under review is the second trial which was held July 22–25, 1991.

sent to or received by the prosecuting attorney as required by § 217.450(1). The record is devoid of any indication that the letter was ever delivered to the director as required by § 217.455 or that Parker ever attempted to comply with that requirement. *See State v. Turley,* 442 S.W.2d 75, 80 (Mo.banc 1969), *cert. denied,* 399 U.S. 934, 90 S.Ct. 2249, 26 L.Ed.2d 805 (1970) (court denied relief to prisoner when no attempt at compliance shown). *Cf. State ex. rel. Clark v. Long,* 870 S.W.2d 932 (Mo.App.1994). Therefore, no certificate from the Director of the Department of Corrections is shown which certified the term of commitment under which Parker was being held, the time already served, the time remaining to be served on the sentence, the time of parole eligibility, and any decisions of the state board of probation relating to Parker. § 217.455(1). Also, the request was not sent by registered or certified mail, return receipt requested, to the prosecutor or the court. § 217.455(2). Because of these additional procedural shortcomings, Parker did not, by filing the May 1990 letter, invoke the right under § 217.460 to have his case dismissed for lack of jurisdiction. *See Duncan,* 864 S.W.2d at 433.

■ On June 4, 1990, Parker filed a "Motion to Dismiss Charges on the Basis of Denial of Right to Speedy Trial" in which he complained that his counsel had "conspired to violate [his] right to a speedy trial ... as guaranteed by the Sixth Amendment." In ten paragraphs of that motion, Parker never mentions the UMDDL nor invokes its provisions. His June 4 speedy trial motion is a request for a speedy trial pursuant to the Sixth Amendment only. It is also procedurally defective to invoke the UMDDL for all the same reasons that the May 11 letter was procedurally defective. *See Duncan,* 864 S.W.2d at 433.

■ On November 19, 1990, Parker filed with the circuit clerk a letter directed to Judge Brackman accompanied by a seven-page document entitled "Supplemental Information Concerning Right To Speedy Trial." In the letter and "Supplemental Information" filing, Parker admits his non-compliance with the UMDDL and explains why he continued instead to seek a speedy trial under the Sixth Amendment. Specifically, he complains that the prosecutor had intentionally failed to file a detainer with the Department of Corrections as "a clever tactic designed to deny my right to file under the Uniform Mandatory Disposition of Detainers Law." Continuing, Parker says that if the prosecutor had filed the detainer, he could then have "filed under the U.M.D.D.L. and the 180 days would have past [sic] long ago."

Thus does Parker admit that he did not attempt to invoke the provisions of the UMDDL, apparently in the mistaken belief that he could not do so until the prosecutor filed a detainer with the Department of Corrections. *Cf. State ex rel. Clark,* 870 S.W.2d 932. Although Parker mentions a 180–day limitation in his November 19 documents, he does so only in the context of his request for speedy trial under the Sixth Amendment. Neither of Parker's November 19 documents invokes the rights under §§ 217.450–217.485. Moreover, there is no proof that either document complied with all procedural requirements of § 217.450 and § 217.455. Nothing in the record shows that either document was delivered to the director as required by § 217.455. Therefore, the required certificate from the Director of Corrections was not provided. § 217.455(1). Neither of the documents was sent certified mail, return receipt requested, to the prosecutor or to the Court. § 217.255(2). For the reasons stated, Parker's November 19 filings did not invoke a right under § 217.460 for Parker to have his case dismissed for lack of jurisdiction. *See Duncan,* 864 S.W.2d at 433.

We mention briefly Parker's letter to Judge Long filed on March 21, 1991. It failed to comply with the requirements of § 217.450 and § 217.455 for the same reasons that his November 19, 1990, filings failed to comply. Moreover, the 180–day limit after March 21, 1991, had not passed when Parker was tried in July 1991.

Summarizing, nothing in this record supports Parker's claim that he requested compliance with the UMDDL. His numerous requests for speedy trial were made pursuant to the Sixth Amendment and not the UMDDL, and they were procedurally insuffi-

cient to invoke the rights under §§ 217.450–485. *Duncan*, 864 S.W.2d at 433.

We make two final observations regarding Point IX.

First, Parker's brief is wholly devoid of argument or citation to authority for that part of Point IX that alleges that he "was denied rights [to a speedy trial] guaranteed [by] the ... Sixth Amendment...." Having failed to pursue and develop those allegations in the argument portion of his brief, Parker has abandoned or waived them on appeal. *State v. Boyer*, 803 S.W.2d 132, 136[2] (Mo. App.1991).

Second, we decline to address that part of Point IX that purports to charge the *motion court* with error "in denying [Parker's] Rule 29.15 motion." Parker's claim of motion court error in Point IX is grounded solely on his insistence that the trial court lost jurisdiction to impose sentence because of violation of his right to a speedy trial. We have addressed and rejected that claim. Parker is not entitled to appellate review of his claim of trial court error both on direct appeal and in his postconviction proceeding. *State v. Vinson*, 833 S.W.2d 399, 408 (Mo.App.1992). Point IX is denied.

*Points VI–Sufficiency of Evidence*

In Point VI, Parker challenges the sufficiency of the evidence to support his convictions for kidnaping and the three related counts of armed criminal action. Specifically he argues that "there was legally insufficient evidence that [Parker] removed the three girls from the gazebo for the purpose of committing the felony of sodomizing [B.D.C.], rather than the misdemeanor of sexually abusing [K.L.B.]." Parker seems to suggest that because the first criminal act committed after the girls were taken from the gazebo was a misdemeanor (third degree sexual abuse of K.L.B. by fondling her breasts), there was legally insufficient evidence from which the jury could reasonably infer his purpose of sodomizing B.D.C. We disagree.

Although Parker did not announce in advance his purpose in removing the girls from the gazebo to the bathroom, there is direct proof that Parker did sodomize B.D.C. From the proof of the consummated sodomy, the jury could reasonably infer that Parker's purpose in removing and confining the girls was to sodomize B.D.C.

Further discussion of this point would serve no jurisprudential purposes. Rule 30.25(b). Point denied.

*Point VIII—Failure to Suppress Identifications*

In Point VIII, Parker charges that "[t]he trial court plainly erred resulting in manifest injustice and a miscarriage of justice when it overruled [his] motion to suppress the identification testimony of [H.J.R., K.L.B., and B.D.C.] because [he] was denied his right to due process ... in that the out-of-court identification procedures were impermissibly suggestive and the identifications were unreliable." Because no contemporaneous objection to the identification testimony was lodged at trial, Parker requests plain error review pursuant to Rule 30.20.

To prevail upon this point, Parker must prove that the investigative procedures employed by the police were impermissibly suggestive, and, then, that the suggestive procedures made the identifications unreliable. *State v. Vinson*, 800 S.W.2d 444, 446[3] (Mo.banc 1990). Although " 'reliability is the lynch-pin in determining the admissibility of identification testimony,' *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977)," *Vinson*, 800 S.W.2d at 446, Parker has to clear the suggestiveness hurdle before obtaining a reliability review. *See Vinson*, 800 S.W.2d at 446. This he has not done.

Parker first argues that a series of composite drawings made by police officers with the assistance of the victims were significantly inconsistent, thus demonstrating unreliability. Parker fails to tell, and we cannot perceive, how such alleged inconsistency, standing alone, proves that impermissibly suggestive investigative procedures were used. Even if the composite drawings were inconsistent, that is a factor relating to reliability which, absent a showing of impermissible suggestiveness, goes to the weight of the testimony and not to the admissibility of the identifications. *See Vinson*, 800 S.W.2d at 466. There being no proof that impermissi-

bly suggestive investigative procedures were employed by the police during preparation of the composite drawings, Parker's argument as to the drawings is rejected.

■ Next, Parker complains that the photographic lineup shown to the victims was unduly suggestive because of the position of his photo among the six used and the background of his photo. We have reviewed this record and we cannot agree that the photo spread techniques were impermissibly suggestive.

■ Finally, Parker recounts that when the "live" lineup was held, his lawyer was inadvertently excluded from the lineup room during the first viewing. Although the police had invited Parker's lawyer to the lineup, he was left in the lobby of the police department through "an accident." When discovered, a second lineup was held with the lawyer present. At both lineups, all three girls identified Parker as their assailant. Parker fails to direct us to any procedure or conduct by the police during either lineup that was impermissibly suggestive of identification and we find no evidence of such in the record.

The trial court did not err, plainly or otherwise, when it overruled Parker's motion to suppress identification testimony. Further discussion of this point would serve no jurisprudential purpose. Rule 30.25(b). Point denied.

*Point XVII—Sufficiency of Evidence*

In Point XVII, Parker contends that the evidence was insufficient in that "[t]he only incriminating evidence against [him] was the identifications of the three victims, which were based on a suggestive photo lineup and unconstitutional physical lineup" and the circumstantial evidence presented was legally insufficient as it "did not exclude every reasonable theory of [Parker's] innocence."

Parker's point is without merit. We have addressed and rejected the Point VIII claim that the pretrial identification procedures were impermissibly suggestive. Moreover, the same standard of review now applies to

both direct and circumstantial evidence cases. *State v. Grim*, 854 S.W.2d 403, 405–08[2] (Mo.banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).[5]

The standard for appellate review of the sufficiency of evidence to support a criminal conviction is stated in *State v. Dulany*, 781 S.W.2d 52 (Mo.banc 1989):

> "On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary.... In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."

*Id.* at 55[2–3] (citation omitted).

■ Here, the three victims identified Parker as their assailant. Their opportunity to see him was during daylight, at close range, and over an extended period. Their credibility and the weight and value to be given their testimony, including the reliability of their identifications, are matters within the province of the jury and are not for review on appeal. *State v. Jenkins*, 776 S.W.2d 59, 63[3] (Mo.App.1989). Under the *Dulany* standard of review we conclude that the trial court did not err in submitting this case to the jury. Point denied.

Parker's remaining direct appeal points relied on are those he has designated VII, X, XI, XII, XIII, and XVIII. No jurisprudential purpose would be served by a written opinion regarding these points, none of which has merit. Rule 30.25(b).

POSTCONVICTION APPEAL—No. 17843

Parker timely filed a *pro se* motion for postconviction relief pursuant to Rule 29.15. In his brief, Parker claims his 259–page pro se motion raises "39 separate issues, many with sub-issues." In an amended motion, appointed counsel incorporated Parker's pro

---

**5.** Had the circumstantial evidence rule not been rejected by the supreme court in *Grim*, the rule would not help Parker because it applied only to cases founded *entirely* on circumstantial evi-

dence. Here, there was direct evidence of Parker's guilt. *See Hewitt v. City of Kansas City*, 781 S.W.2d 125, 127[3] (Mo.App.1989).

se allegations and added other grounds for relief. Following an evidentiary hearing, the motion court denied relief.

On appeal, Parker presents eight points of error relating to denial of his Rule 29.15 motion, including the portion of Point IX devoted to a challenge to the motion court's judgment.

*Point II—Defect in Information*

In material part, Parker's second point reads:

"II. The motion court clearly erred in denying [Parker's] Rule 29.15 motion because [his] conviction for the class A felony of sodomy violates [Parker's] right to due process of law ... in that the amended information was insufficient where it did not include an aggravating factor, which was necessary to make sodomy a class A felony."

This point of error arises because the State charged Parker with class A sodomy (Count I), but failed to charge that "during the commission thereof" he either displayed a deadly or dangerous weapon or that there existed any other circumstance listed in § 566.060.2 necessary to raise the crime from an unclassified offense to a class A offense.[6]

Parker mounted no challenge to the information in the trial court. His first complaint in that regard is in his pro se and amended Rule 29.15 motion in which he alleges that the trial court was without jurisdiction to sentence him on any of the charges because the information was defective. We quote from his amended motion as follows:

"8(a) ... [T]he trial court did not have jurisdiction over [Parker] because the information charging [Parker] with the class A felony of sodomy was fatally defective and the conviction obtained was for a crime not charged and all charges in the successive counts were defective because

the sodomy count did not confer jurisdiction upon the court."

His sole allegation of prejudice reads:

"9(a) Had [Parker] been properly notified of the elements of the offense with which he was charged, ... there is a reasonable likelihood that the results of this case would have been different."

The motion court rejected this allegation, saying that the trial court "did have jurisdiction ... and ... [Parker] did have notice of the charges against him and was able to prepare for trial," citing *State v. Parkhurst,* 845 S.W.2d 31 (Mo.banc 1992).

■ Our review of the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin,* 835 S.W.2d 905, 928 (Mo.banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). The findings and conclusions of the motion court are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.* 835 S.W.2d at 928[42].

■ Allegations in a motion for postconviction relief are not self-proving, and a movant must prove his grounds for relief by a preponderance of the evidence. *State v. Simmons,* 825 S.W.2d 361, 365[14] (Mo.App. 1992).

When the sufficiency of an information or indictment is raised for the first time after verdict, as was done here, the charge

"will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a postverdict claim that the information or in-

6. In pertinent part, § 566.060.2 reads:
"2. Forcible sodomy ... as described in subsection 1 ... is a felony for which the authorized term of imprisonment ... is life imprisonment or a term of years not less than five years, *unless in the course thereof the actor inflicts serious physi-*

*cal injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to deviate sexual intercourse or sexual intercourse with more than one person, in which cases forcible sodomy ... is a class A felony."* (Emphasis ours.)

dictment is insufficient unless the defendant demonstrates actual prejudice."

*Parkhurst,* 845 S.W.2d at 35; *State v. Hill,* 865 S.W.2d 702, 706[11] (Mo.App.1993).

■ Parker fails to show or argue that actual prejudice resulted from the deficiency in Count I of the information. Neither by his own testimony at his Rule 29.15 hearing nor by other means did he present evidence to support his claim that he was unaware that he was charged with using a weapon while committing sodomy. To the contrary, the record indicates Parker knew what he was charged with and what facts the charge was based on. Such indication is found in the multitude of pro se filings by Parker. Another indication of Parker's knowledge can be inferred from Count V. There, he was charged with armed criminal action for committing the sodomy charged in Count I "with and through the ... assistance and aid of a dangerous weapon." An inference reasonably drawn from the language in Count V is that Parker knew that he was charged with using a dangerous weapon during the sodomy. Separate counts in an information are not isolated, to be read without reference to the other counts. *See State v. Cox,* 820 S.W.2d 532, 538 (Mo.App.1991). The motion court's findings that Parker knew what the charges were and that he was able to prepare for trial are not clearly erroneous. *See* Rule 29.15(j); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo.banc 1987).

Additionally, Parker offered no evidence in support of his allegation that the results of the case would have been different had he been advised of the elements of the offense. To the contrary, the record reveals that Parker's defense was alibi, specifically that he was elsewhere when the crimes were committed and, therefore, could not be the perpetrator. Neither by pleading, evidence, nor argument does Parker suggest a different defense would have been available or used had the "weapon" aggravating circumstance been specifically pled in Count I. No prejudice to Parker is shown. *See Hill,* 865 S.W.2d at 706 n. 7 (citing *Parkhurst,* 845 S.W.2d at 35). Point II is denied.

*Point III—Ineffective Counsel For Failure to Challenge Information*

Parker's third point claims that the motion court erred in denying him relief because his trial lawyer was ineffective for not seeking dismissal of the deficient Class A felony sodomy charge. He argues that he sustained prejudice "because, had defense counsel made a timely objection, the count would have been dismissed."

■ To prevail on a claim of ineffective assistance of counsel, a movant must show that his trial lawyer's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064[5], 80 L.Ed.2d 674, 693[10] (1984). A movant "must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *Sanders,* 738 S.W.2d at 857 (emphasis in original).

The prejudice prong is not presumed upon a showing of deficient performance, but also must be affirmatively proved; neither is prejudice proved by showing that a trial lawyer's errors affected the outcome of the proceedings, but, rather, there must be proof of a reasonable probability that the result would have been different but for the errors. *Sidebottom v. State,* 781 S.W.2d 791, 796[6, 7] (Mo.banc 1989), *cert. denied* 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). "If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed." 781 S.W.2d at 796[9]. "There is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Chowning,* 866 S.W.2d 165, 172 (Mo. App.1993).

■ Our conclusion reached in Point II that Parker has shown no prejudice is dispositive of Point III. We reject, as pure speculation, Parker's argument that if his trial lawyer had moved to dismiss Count I, it "would have been dismissed." While such a result is conceivable, a more reasonable probability is that the State would have

moved to amend and the motion would have been sustained. Point III is denied.

*Point V—UMDDL Claim*

In Point V Parker claims the motion court erred in denying his Rule 29.15 motion because the trial court lacked jurisdiction to sentence him. His Point V claim is rooted in provisions of the UMDDL, which read:

"2. The director shall promptly inform each offender in writing of the source and nature of any untried indictment, information or complaint against him of which the director has knowledge, and of his right to make a request for final disposition of such indictment, information or complaint.

3. Failure of the director to inform an offender, as required by this section, within one year after a detainer has been filed at the facility shall entitle him to a final dismissal of the indictment, information or complaint with prejudice."

§§ 217.450.2 and .3, RSMo Supp.1990.

Relying on those provisions, Parker asserts "[he] was entitled to dismissal of the information with prejudice because the Director of the Department of Corrections or his designee had knowledge of the untried information and failed to inform [Parker] in writing of the source and nature of that information within one year."

Parker pled in his pro se Rule 29.15 motion that a warrant issued for his arrest by the Missouri Board of Probation on September 5, 1989, and directed to the Sheriff of Franklin County, was a "detainer" within the meaning of the UMDDL. Continuing, Parker alleged that this so-called "detainer" was placed in his file at the penitentiary but that the Director then failed to inform Parker of his right to request final disposition of these charges until January 11, 1991, a period of more than one year after the warrant was issued. Parker's motion concludes by saying that he was entitled to a final dismissal of the information and that the motion court was required to give relief via Rule 29.15 because

the trial court lost jurisdiction over the matter.

■ The motion court did not issue a factual finding pertaining to Parker's allegations but, under the circumstances, it was not required to do so. At his Rule 29.15 hearing, Parker placed the probation violation arrest warrant in evidence and argues on appeal that it is substantive evidence to support his claim that a detainer was on file.[7] However, Parker points to no evidence and we find none in the record to support his allegation that the Director "failed to inform [him] in writing of the source and nature of that information within one year."

Allegations contained in a postconviction motion are not self-proving and a movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. Rule 29.15(h); *Simmons,* 825 S.W.2d at 365[14]. Here, Parker did not present evidence to support his claim that the Director failed to inform him of the pending information and his right to request final disposition of that information.

"Where a movant has failed to provide substantive evidence at a hearing to support an allegation, a [trial] court cannot be found to have erred by not making findings on the allegation." *Simmons,* 825 S.W.2d at 365[15]. As no substantive evidence to support this allegation was provided, no findings were required. Consequently, there is nothing for us to review. Point denied.

Parker's remaining points on appeal attacking the denial of postconviction relief are those he has designated IV, XIV, XV, and XVI. None of these points has merit. An opinion regarding these points would have no precedential value. Rule 84.16(b)(5).

We affirm the judgment and sentences in No. 17843. We affirm the judgment denying postconviction relief in No. 18969.

■

---

7. Our supreme court has said, " 'A detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending ... charges....' " *State ex rel. Kemp v. Hodge,* 629 S.W.2d 353, 354 n. 2 (Mo.banc 1982) (quoting *United States v. Mauro,*

436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978)). While we entertain grave doubts that this probation arrest warrant would be viewed by any court as a detainer within the meaning of the UMDDL, we need not decide that question because of our disposition of Point V.