STATE of Missouri, Plaintiff–
Respondent,

v.

Steven GARRISON, Defendant–Appellant.

No. 20548.

Missouri Court of Appeals,
Southern District,
Division One.

July 11, 1996.

Rosalynn Koch, Asst. Public Defender, Columbia, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Attorney General, David R. Truman, Assistant Attorney General, Jefferson City, for plaintiff–respondent.

PER CURIAM.

Steven Garrison (Defendant) appeals from his jury convictions on one count of forcible rape, § 566.030, RSMo Cum.Supp.1992; one count of forcible sodomy, § 566.060, RSMo Cum.Supp.1992; one count of first degree robbery, § 569.020, RSMo 1986; and one count of first degree burglary, § 569.160, RSMo 1986. Defendant was sentenced as a prior offender, a persistent offender and a Class X offender to thirty years on each of the rape, sodomy and robbery counts, to be served concurrently. He was sentenced to a term of ten years on the burglary charge, to be served consecutively to the other sentences.

Defendant raises two points on appeal. First, Defendant claims that the trial court erred in denying Defendant's two requests to proceed pro se at trial. Second, Defendant asserts that the trial court abused its discretion in denying Defendant's request for a continuance in order to obtain independent testing of a tape recorded confession which the Defendant believed had been altered.

The sufficiency of the evidence to support the conviction is not challenged. Thus when viewed in the light most favorable to the verdicts, the essential evidence adduced at trial established the following scenario.

In August of 1993, Defendant entered the apartment of S.W.[1] through an improperly functioning window. At the time, S.W. was a twenty year old college student living alone in the apartment. She awoke between 3:00 A.M. and 4:00 A.M. when she heard a sound as if someone was "messing with the window." Defendant told S.W. he had a gun and that he wanted to use the phone. S.W. grabbed the telephone, inadvertently ripping the phone cord out of the wall, and ran into the bathroom, locking the door behind her. After ten minutes in the bathroom she heard nothing and opened the door. Defendant was standing there.

After ordering her to turn off the lights, he took her into the bedroom and ordered her to remove her clothes. He removed all of his clothing except for his socks. Defendant ordered S.W. to lay on the bed against the wall and he laid down beside her, blocking any exit she may have had. Defendant proceeded to fondle S.W. for about an hour. At one point, he placed his hands around her neck as if he was going to strangle her. Defendant escorted S.W. into the kitchen to get a drink at which point he grabbed a knife with a five to six inch blade. He threatened to kill S.W. and then escorted her back to the bedroom with the knife behind her back.

After a trip to the bathroom, Defendant again began fondling S.W. He left bruises on her neck from biting and sucking. He forced S.W. to place her mouth and hands on his penis and eventually forced her to have intercourse. At one point, Defendant took

1. We use the initials of the victim to avoid any embarrassment to her.

the knife he had taken from the kitchen and threatened to put it into her vagina. Again, after a trip to the bathroom, Defendant began to fondle S.W. and forced her to have intercourse, this time both vaginally and anally. He then stuck his tongue in her anus and forced her to urinate in his mouth.

Defendant ordered S.W. to get up and told her to wipe off the door handle and the screen as he did not want to leave any fingerprints. He then asked S.W. if she had any money. She gave him $552.00 in cash, money that her parents had given her for rent and utilities. Defendant then told S.W. to take a shower and that he might or might not be there when she got out. S.W. took a fifteen to twenty minute shower and then left the apartment about 10:00 A.M.

# I

At some point during Defendant's pre-trial incarceration at the Greene County jail his phone privileges were revoked. There had apparently been threats made by Defendant against Defendant's previous lawyer (who later withdrew from the case for reasons we do not know) and threats made against the victim by an acquaintance of Defendant. Defendant attempted on several occasions to have his phone privileges restored and was ultimately successful.

The jury was sworn on September 12, 1995. On September 13, 1995, the day the trial was to begin, defense counsel and his family received a threat by an unknown individual. The trial court once again revoked Defendant's telephone privileges.

Defendant made two different oral requests to proceed pro se both of which were denied by the trial court. His first request took place on September 13, 1995, as he was requesting a hearing on the revocation of his telephone privileges. The exchange that took place is as follows:

DEFENSE COUNSEL: It's been brought to my attention by Mr. Garrison that the telephone privileges that Mr. Garrison has [sic] restored to him after protracted litigation in this case pretrial have again been removed from him.

Mr. Garrison at this time formally requests some hearing to show what basis for the decision that that [sic] was made and he believes that as a matter of due process he should be informed as to why the telephone privileges were taken from him as to what the basis is, what the evidence is and have an ability to confront and cross-examine any accusers as to any kind of telephone misconduct.

THE COURT: Telephone use in the jail is a privilege and not a right. We've kicked this around back and forth and I think I was more than reasonable under the circumstances in restoring Mr. Garrison's telephone privileges.

In view of the events this morning, I understand that Mr. Garrison contends that he had no participation in what happened to you this morning.

DEFENSE COUNSEL: That's correct, Your Honor, and I believe him.

THE COURT: In any event, I have to cover all the bases. That's my responsibility, the security of all concerned. There will be no telephone privileges until the conclusion of the trial and then we'll re-evaluate it. There will be no hearing.

DEFENDANT: Well, I have something I'd like to say on that, Your Honor.

THE COURT: Very well.

DEFENDANT: If that's the case, if I'm being punished for someone that put a threat on his life, I don't want him as my attorney. I wouldn't put a threat on him. I think he's the best attorney in Springfield. But if we're going to get in this cat and mouse, he just said he didn't think it was me. I don't know what base you're trying to cover. I did not threaten this man. None of my people threatened this man and wouldn't threaten this man. He's the best lawyer I ever had. And If we're going to play this kind of game, I request to represent myself pro se and I'm not going to let this man do it if you're— that's—you're contradicting everything. I'm supposed to have a working rapport with this man and I tell him I want him to be my legal counsel and you're telling me no because you have to cover all bases. Well, if I'm trusting my life in this man's

hands and I want him to represent me, how are you keeping me from talking to my family after my father just died and my uncle just died, my grandmother just died and my mom's in poor health. I think you're just playing with me, man. I've told it on the record here, this man's—I want this man to be my lawyer.

THE COURT: I think perhaps, Mr. Garrison, you're playing with me.

DEFENDANT: No, I don't believe I am either.

THE COURT: The fact is that whether you have telephone privileges or not has nothing to do with your representation and of course you'll have complete telephone contact with your attorney.

If your request is to proceed pro se, it's clear that that's an inappropriate reason. The request is denied. You will proceed.

A few moments later, there were additional discussions had about Defendant's request to proceed pro se. Defense counsel relayed that Defendant was concerned that his motion to proceed pro se was not articulated clearly. In addition, defense counsel offered to withdraw in order to facilitate his client's desire to represent himself. The trial court responded:

> If Mr. Garrison has articulated some real desire to represent himself, I would give that some serious consideration. It's clear that he, from what he has said, that he is using that as leverage to restore his telephone privileges. I will not allow that to happen.

■ A defendant has a constitutional right under the Sixth and Fourteenth Amendments to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). An attorney cannot be forced upon a defendant when he insists on proceeding pro se. *State v. Herron*, 736 S.W.2d 447, 449 (Mo.App.1987). This right of self-representation, however, is conditional. *Id.* "The right to self-representation is one that the defendant must clearly and unequivocally assert before trial". *State v. Wilson*, 750 S.W.2d 560, 564 (Mo.App.1988). "[A] request is not considered unequivocal where the defendant merely states that he would prefer to represent himself rather

than accept the aid of his appointed attorney." *State v. Hamilton*, 791 S.W.2d 789, 796 (Mo.App.1990). Furthermore, a motion to proceed pro se that is expressed without deliberation, *see State v. Gomez*, 863 S.W.2d 652, 657 (Mo.App.1993), or on the "spur of the moment," *id.* at 655, will not be considered unequivocal.

■ Additionally, the request to proceed pro se must be timely. *State v. Parker*, 890 S.W.2d 312, 316 (Mo.App.1994). If the request is untimely, then the trial court, in its discretion, may refuse to allow the defendant to proceed pro se. *Herron*, 736 S.W.2d at 449. A demand to proceed pro se made after jury selection is clearly untimely. *State v. Power*, 721 S.W.2d 194, 195 (Mo.App.1986); *see also Richardson v. State*, 773 S.W.2d 858, 860 (Mo.App.1989). "The right of self-representation is intended to insure an accused's right to a full and fair trial but is not intended to enable an accused to avoid or delay the trial for any unjustifiable reason." *Parker*, 890 S.W.2d at 316.

■ This first request was both untimely and equivocal. The request was made on September 13, 1995, the day after the jury had been chosen and sworn. Additionally, the request was equivocal as it was obviously in response to the fact that Defendant had once again lost his telephone privileges. These facts and circumstances allowed the judge to conclude that Defendant's reason for making the request to represent himself was not because he truly felt this would be a better course of action but was, instead, a tactic to have his telephone privileges reinstated. From Defendant's own statements it is clear that he had no qualms with the representation that he had received from his attorney.

■ The second request made by Defendant to proceed pro se came on the second day of trial. This request was clearly untimely. *See Gomez*, 863 S.W.2d at 657; *Power*, 721 S.W.2d at 195.

> The court, the prosecutor, and especially the criminal defendant, need ample time to prepare for trial. Allowing an untimely motion to proceed pro se would either

require a continuance, which is not the intended use of the right, or would require the proceedings to proceed as scheduled which would not be fair to the parties involved, especially an unprepared defendant.

*Gomez,* 863 S.W.2d at 656 (citation omitted). It was within the trial court's discretion to deny Defendant's request. Point denied.

## II

 Appellant's second point claims that the trial court erred in denying his request for a continuance. Defendant sought a continuance so that a tape recorded statement he made to the police on February 1, 1994, could be independently tested for tampering as Defendant believed that some portions of the tape had been altered.

Defendant filed a discovery request on July 13, 1994, for any written or recorded statements made by Defendant. In response to this request, a transcript of the recorded statement was timely turned over to Defendant. In addition, the State requested that the police department make a copy of the tape itself to fulfill defense counsel's request. The actual copy of the tape was received by Defendant on September 5, 1995.

On September 7, 1995, Defendant filed a written Motion for Independent Testing of Tape Recording and the motion was taken up on the same day. Although defense counsel intimated the need for a continuance of trial, he simply never, expressly, made a formal request for continuance of the trial. The colloquy went as follows:

DEFENSE COUNSEL: Judge, I have been frantically trying to find somebody to do [the tape testing]. As you know, I haven't had the tape very long. Quite frankly, I don't have anybody yet. And if I find somebody, I'm not sure that it can be done by Monday.

THE COURT: Well, it sounds like the kind of thing that can be done in an hour.

DEFENSE COUNSEL: I'm not sure how far I'm going to have to go, Judge.

. . . .

THE COURT: This is easy. If you can find somebody to analyze the tape, I'll order them to take the original tape to that person's shop and let them have a look at it, but I won't delay the trial to do it.

In particular, there was no compliance with Rule 24.09, Missouri Rules of Criminal Procedure (1995). Rule 24.09 states:

An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally.

The State never consented to any oral application for continuance by Defendant.

Defendant's second point fails on procedural grounds because his request for a continuance was not in compliance with Rule 24.09. Defendant's failure to request the continuance by written motion accompanied by an affidavit is sufficient grounds to affirm the trial court's ruling. *State v. Sweet,* 796 S.W.2d 607, 613 (Mo. banc 1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991); *State v. Lopez,* 836 S.W.2d 28, 32 (Mo.App.1992); *State v. Drewel,* 835 S.W.2d 494, 496 (Mo.App.1992).

 Defendant's point has no merit for substantive reasons as well. "The grant of a motion for continuance rests within the sound discretion of the trial court." *Lopez,* 836 S.W.2d at 32. This Court will not interfere with the exercise of that discretion absent a strong showing of abuse. *Herron,* 736 S.W.2d at 450. "Before refusal to grant a continuance will be construed an abuse of discretion, defendant must demonstrate the denial is prejudicial." *Lopez,* 836 S.W.2d at 32.

We find that no prejudice has resulted in the trial court's failure to grant a continuance. First, Defendant was timely provided with the transcript of the tape following the initial discovery request filed on July 13, 1994. Upon reviewing the transcript at that time, Defendant would have been made aware of any portions that were missing. The motion to have the tape independently tested could therefore have been filed far in advance rather than four days before jury selection was to begin.

Furthermore, Defendant was not prejudiced by what he claims was omitted from the tape. Defendant stated in his Motion for Independent Testing of Tape Recording that "detailed and lengthy discussions concerning an offense not directly related to the case at bar had been removed by some party as this tape was being prepared for use at trial."

Defendant's allegations that the missing portion of the tape contained a discussion of other, unrelated crimes does not show that he was prejudiced as the alleged missing information was inadmissible and could not have been played for the jury. It is well established that evidence of other crimes is not admissible at trial. Evidence is generally inadmissible if it shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime or crimes. *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989); *State v. Schwartz,* 899 S.W.2d 140, 145 (Mo.App. 1995); *State v. Fleischer,* 873 S.W.2d 310, 314 (Mo.App.1994).

Furthermore, Defendant has failed to specify any other portions of the tape that he believes are missing, despite the fact that he was obviously present during the interview and has had ample opportunity to study the transcript of the tape recording.

The judgment of the trial court is affirmed.